******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MULLINS, J., concurring in part and dissenting in part. I agree with part I of the majority opinion, but I respectfully disagree with part II. As the United States Supreme Court has explained, a trial court commits a " 'trial error' " when it "err[s] in admitting a particular piece of evidence, and without it there was insufficient evidence to support a judgment of conviction. But clearly with that evidence, there was enough to support the . . . [the finding or] verdict . . . ." (Emphasis omitted.) *Lockhart* v. *Nelson*, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). Under those circumstances, double jeopardy does not bar retrial because there is, in fact, sufficient evidence to support the finding or verdict, but the defendant has been convicted in a judicial process that was defective. See id., 34, 40–41. Consistent therewith, a trial error is subject to harmless error review, pursuant to which the reviewing court assesses how the error affected the finding or verdict. See, e.g., *United States* v. *Quinn*, 901 F.2d 522, 526, 528–29, 531 (6th Cir. 1990) (applying harmless error review to claim that trial court improperly admitted testimony of witness from suppression hearing but considering that same improperly admitted testimony in sufficiency of evidence analysis).

On the other hand, in deciding a sufficiency of the evidence claim, the reviewing court does not assess how the error affected the finding or verdict but, rather, considers all of the evidence that was considered by the fact finder, both properly and improperly admitted evidence, and determines whether there was sufficient evidence to support the finding or verdict. See, e.g., *State* v. *Gray*, 200 Conn. 523, 538–40, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). If the evidence was not sufficient, retrial is barred by double jeopardy, and an acquittal is required. See, e.g., id., 535–36. These two types of claims are distinct. See, e.g., *State* v. *Carey*, 228 Conn. 487, 496, 636 A.2d 840 (1994) ("[c]laims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error").

The majority's resolution of this case is flawed because, by failing to consider evidence that was expressly considered by the fact finder in arriving at its finding, it merges these two distinct claims, only one of which was raised by the defendant, Ulises Robles—the sufficiency of the evidence. In considering that claim, this court must review the same quantum of evidence that the trial court reviewed and determine whether that evidence was sufficient to support the trial court's finding. See, e.g., id. ("appellate review of the sufficiency of the evidence . . . properly includes [improperly admitted] evidence even if such evidence was admitted

despite a purportedly valid objection" (citation omitted)).

Instead of addressing the defendant's sufficiency claim independently of evidentiary or trial error—which means that we should consider the stipulation in our review of the sufficiency of the evidence—the majority concludes that the trial court improperly relied on the stipulation for purposes of count three, which charged the defendant with illegal possession of a weapon in a motor vehicle, because the parties intended it to be admitted only for the limited purpose of count two, which charged the defendant with criminal possession of a firearm, and that, without this stipulation, there was insufficient evidence presented on count three. See part II of the majority opinion. Accordingly, the majority reverses the judgment of the trial court as to count three and remands the case to the trial court with direction to render a judgment of acquittal on that count. I disagree because, in considering a sufficiency of the evidence claim, we review all of the evidence the fact finder considered in arriving at its finding or verdict. Doing so in this case leads me to conclude that the stipulation that the defendant was a convicted felon constituted sufficient evidence to support the element of count three that he did not possess a proper permit for a firearm. See, e.g., *State* v. *Davis*, 324 Conn. 782, 794–95, 801, 155 A.3d 221 (2017); see also General Statutes (Rev. to 2017) § 29-38 (a).[1]

I

In the present case, it is undisputed that the prosecutor expressly relied on the stipulation for purposes of count three in his closing argument without any objection from defense counsel, and the trial court expressly considered it for purposes of count three as evidence supporting its finding.[2] Therefore, if the parties did intend for the stipulation to be used only for purposes of count two, and the trial court considered it beyond its limited purpose, I would conclude that such an error is an evidentiary or " 'trial error,' " as described by the United States Supreme Court in *Lockhart* v. *Nelson*, supra, 488 U.S. 40. However, that claim is not before us.

The sufficiency claim that is before us requires that we consider all of the evidence the trial court reviewed in arriving at its finding. This is the way in which this court has always addressed sufficiency of the evidence claims. For example, in *State* v. *Gray*, supra, 200 Conn. 523, when addressing a sufficiency of the evidence claim, this court considered the defendant's statement obtained in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), which was improperly admitted. See *State* v. *Gray*, supra, 534–36. This court concluded that the evidence, including the improperly admitted statement, was sufficient on some counts and not sufficient on others. Id., 537–38. However, because this court concluded that the statement was improperly admitted, it remanded

the case for a new trial on those counts for which there was sufficient evidence notwithstanding the evidentiary error. See id., 538–39; see also id., 539 ("[when] a reversal of a conviction is not a result of insufficiency of evidence but is predicated on, for example, as here, the reception of inadmissible evidence . . . a remand for a new trial is proper and an appellate court should not review the remaining evidence to determine whether it is sufficient to sustain the conviction").

Here, the trial court's use of the stipulation beyond its limited purpose is properly understood as a trial error, which, if harmful, would result in a reversal of the conviction and a new trial. This is consistent with how similar claims have been treated in the past. For instance, in *State* v. *Heinz*, 1 Conn. App. 540, 473 A.2d 1242, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984), the Appellate Court addressed a claim that the jury had improperly considered an exhibit for a purpose other than the limited one for which it was admitted. See id., 545–47. The court explained that "[i]t is error to admit an exhibit, particularly a key exhibit . . . for one purpose and then to charge the jury that it may be considered for another purpose." Id., 546–47. The Appellate Court then considered the claim as an evidentiary claim subject to harmless error analysis. See id., 547; see also *Access Agency, Inc.* v. *Second Consolidated Blimpie Connecticut Realty, Inc.*, 174 Conn. App. 218, 229, 165 A.3d 174 (2017) ("Evidence [that] is offered and admitted for a limited purpose only, and the facts found from such evidence, cannot be used for another and totally different purpose. . . . It was improper for the [trial] court to use the [disputed evidence] for substantive purposes when it was admitted for the limited purpose of testing [a witness'] credibility. *Such error, however, is subject to a harmless error analysis.*" (Citation omitted; emphasis added; internal quotation marks omitted.)); *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 650, 867 A.2d 860 (applying harmless error analysis to claim that trial court had considered evidence for purpose other than limited one for which it was admitted), cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005).[3]

The United States Supreme Court has explained the importance of respecting the distinction between trial errors and sufficiency of the evidence claims. In *Lockhart* v. *Nelson*, supra, 488 U.S. 33, the court reasoned that, in its previous decision, *Burks* v. *United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), the court "was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary 'trial errors' as the 'incorrect receipt or rejection of evidence.' . . . [Although] the former is in effect a finding 'that the government has failed to prove its case' against the defendant, the latter 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply

'a determination that [he] has been convicted through a judicial process [that] is defective in some fundamental respect.' " (Citation omitted; emphasis omitted.) *Lockhart* v. *Nelson*, supra, 40, quoting *Burks* v. *United States*, supra, 15.

On the basis of this distinction, the court further explained that "[p]ermitting retrial [when there has been a trial error] is not the sort of governmental oppression at which the [d]ouble [j]eopardy [c]lause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to 'obtai[n] a fair readjudication of his guilt free from error.' " *Lockhart* v. *Nelson*, supra, 488 U.S. 42, quoting *Burks* v. *United States*, supra, 437 U.S. 15. Accordingly, the United States Supreme Court in *Lockhart* concluded that a new trial was the appropriate remedy in a case in which the trier of fact had considered improper evidence in reaching its verdict, but in which, without that evidence, there would have been insufficient evidence to sustain the respondent's conviction. See *Lockhart* v. *Nelson*, supra, 34, 40–41.[4]

Courts in other jurisdictions have also remanded cases for a new trial in which a trial court improperly had admitted evidence, even when, without the improperly admitted evidence, there would have been insufficient evidence to support the finding or verdict. For instance, in *State* v. *Gibson*, 219 N.J. 227, 98 A.3d 519 (2014), the New Jersey Supreme Court concluded that the trial court erred by admitting video evidence and the testimony of a police officer from the pretrial suppression hearing, and that, "[w]ithout that evidence, the [s]tate could not meet its burden of proof." Id., 246. Relying on *Lockhart*, the court concluded that, because this improperly admitted evidence had been before the fact finder, there was sufficient evidence. See id. The court further concluded that a remand for a new trial was the appropriate remedy and "emphasize[d] the importance of distinguishing between those errors that are procedural in nature, and those errors that affect the sufficiency of the evidence. . . . [I]t would be a high price indeed for society to pay were every [defendant] granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." (Internal quotation marks omitted.) Id., 246–47.

In the present case, the majority asserts that, "[c]ontrary to [my] contention [in this opinion], the issue is not whether the trial court *improperly admitted* the stipulation for purposes of count three. The issue, rather, is whether the court *improperly used* evidence that was properly admitted in order to support a different purpose for which the evidence was not admitted. The trial court did not admit the stipulation for purposes of count three *at all* because it was never asked to do so." (Emphasis in original.) Part II of the majority opinion. Setting aside the fact that defense counsel did say that

the stipulation was for the court trial, which included count three, it is undisputed that the stipulation was admitted into evidence, that the state relied on it in support of count three, and that the trial court considered the stipulation for purposes of count three. The majority makes a meaningless distinction between the admission of the stipulation into evidence for count three and the trial court's consideration of the stipulation for purposes of count three.[5] Such a distinction is irrelevant. Whether we call it improper admission or improper use or consideration, the error is an evidentiary or trial error, not unlike any other claim that a fact finder considered evidence for one count that it should not have. Therefore, because the trial court considered the stipulation for count three without objection, we must also consider the stipulation in connection with this sufficiency of the evidence claim. As we explained in the context of a jury trial in *Riley* v. *Travelers Home & Marine Ins. Co.*, 333 Conn. 60, 214 A.3d 345 (2019), "a court reviewing the sufficiency of the evidence to support a jury's verdict must consider all of the evidence considered by the jury returning the verdict . . . ." (Emphasis omitted.) Id., 64.

The majority relies on *State* v. *Knox*, 201 Conn. App. 457, 472–74, 242 A.3d 1039 (2020), cert. denied, 336 Conn. 905, 244 A.3d 146 (2021), and cert. denied, 336 Conn. 906, 243 A.3d 1180 (2021), in support of its position that an acquittal due to evidentiary insufficiency is required here. See part II of the majority opinion. *Knox*, however, cannot support the weight the majority places on it.

The majority provides the following explanation for *Knox*: "[W]hen evidence was admitted exclusively for purposes of one particular count, [the] jury could not rely on [that] evidence to support [a] finding that [the] state had established [an] element of crime charged in another count . . . ." (Citations omitted.) Id.; see also *State* v. *Knox*, supra, 201 Conn. App. 472. I have no quarrel with that general proposition. It's the other distinguishing features of *Knox* that make the comparison between this case and that one problematic. For instance, unlike in the present case, in *Knox*, it was undisputed that the defendant's prior felony conviction was admitted for a limited purpose—namely, for the criminal possession of a firearm charge and for no other purpose. *State* v. *Knox*, supra, 464–65. Indeed, in *Knox*, "[w]hen the parties' stipulation regarding the defendant's prior felony conviction was admitted into evidence and read to the jury, the [trial] court limited its use to the charge of criminal possession of a firearm. The court repeated that limitation during its charge to the jury. At no point did the [prosecutor] object to the limited purpose for which the evidence of the defendant's prior felony conviction could be used." Id., 472. Therefore, the fact finder did not consider the felony conviction for any other purpose, including the defen-

dant's charge of tampering with physical evidence. See id., 472–73.

Accordingly, because the fact finder was expressly instructed not to consider the prior felony conviction for any count other than the criminal possession of a firearm charge, the Appellate Court concluded in *Knox* that, on appeal, it could not consider the felony conviction when determining whether there was sufficient evidence to support the jury's verdict on the tampering with physical evidence charge. See id., 473–74. In other words, the Appellate Court understood that the sufficiency of the evidence claim had to be viewed in light of the same evidence that the jury considered in deciding the tampering charge. Therefore, I would conclude that *Knox* is consistent with my position that, in resolving a sufficiency of the evidence claim, all evidence considered by the fact finder is considered by the reviewing court.

In the present case, the prosecutor argued that the stipulation applied to count three during his closing argument, the trial court expressly applied the stipulation to count three in its decision, and defense counsel at no point challenged the court's consideration of the stipulation for purposes of count three. Thus, unlike in *Knox*, the record in the present case demonstrates that the fact finder itself considered the stipulation for purposes of count three. Therefore, unlike in *Knox*, in which the fact finder did not consider the stipulation and, accordingly, the reviewing court could not, in the present case, the fact finder did consider the stipulation, and this court should also do so.

I also disagree with the majority's characterization of defense counsel's failure to object to the trial court's explicit reliance on the stipulation for purposes of count three prior to, during, or after closing arguments as a "result of an oversight . . . ." Footnote 19 of the majority opinion; see also part II of the majority opinion. That characterization is remarkable.

First, the record on why defense counsel failed to object is silent, and, therefore, I do not think we can surmise counsel's motive. Assessing counsel's motives on direct appeal without input from counsel is something we typically do not do. See, e.g., *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480 ("[t]he trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action"), cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Normally, a hearing would be required, such as a habeas proceeding or a hearing on a petition for a new trial, at which counsel can explain his or her reasons for not objecting to certain evidence before we deem the absence of an objection an oversight.

Second, the majority's characterization of defense

counsel's actions as an "oversight" suggests that counsel was not competent and that the failure to object was a mistake. The failure to object could just as easily suggest that defense counsel did not view the stipulation as limited to count two, given the fact that the stipulation itself did not expressly provide that it was limited to count two, the fact that defense counsel told the trial court that the stipulation applied to the court trial, and the fact that he did not include such a claim in a motion for a judgment of acquittal following the court trial. Of course, counsel is not required to object to every impropriety during a trial. Indeed, in the habeas context, when we review an attorney's actions taken during the criminal trial, we presume that his or her actions were the result of sound trial strategy, unless proven otherwise. See, e.g., *Strickland* v. *Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (internal quotation marks omitted)).

Finally, it is lost on me how, on direct appeal, this purported oversight is or should somehow be treated differently from any other unpreserved evidentiary claim. Indeed, the majority excuses defense counsel's failure to object to the trial court's express reliance on the stipulation in a timely manner as "an oversight," yet concludes that the defendant is entitled to an acquittal on count three because of the trial court's use of the stipulation. Part II of the majority opinion. The majority runs afoul of our well established rule that parties must preserve their claims for appeal, in the absence of very limited circumstances, such as when a defendant is entitled to have his claim reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), for constitutional claims or under the plain error doctrine for obvious error that results in manifest injustice. See, e.g., *State* v. *Bermudez*, 274 Conn. 581, 586, 876 A.2d 1162 (2005). See generally *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 149–61, 84 A.3d 840 (2014) (discussing circumstances under which reviewing court may consider party's unpreserved claims). Is there now an "oversight" exception for unpreserved evidentiary claims? Rather than go down this new road on which the majority is traveling with respect to evidentiary claims raised in conjunction with, or masquerading as, sufficiency claims, I would treat this evidentiary claim like every other unpreserved evidentiary claim and not review it. Therefore, I would conclude that any evidentiary based claim that the trial court improperly considered a stipulation beyond the purpose for which it was admitted was not preserved and is not before us. This appeal raises only a sufficiency claim, which, as I explained, requires that we consider the

improperly considered evidence that was considered by the fact finder.

Accordingly, I would conclude that our review of the sufficiency claim must involve a review of all of the evidence that the trial court considered, including the stipulation, and the reasonable inferences drawable therefrom.

II

Having concluded that the stipulation should be considered when reviewing the sufficiency of the evidence claim, I now consider whether the evidence was sufficient to support the defendant's conviction of illegal possession of a weapon in a motor vehicle.

The weapon in a motor vehicle statute, General Statutes (Rev. to 2017) § 29-38, provides in relevant part: "(a) Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 . . . shall be guilty of a class D felony . . . ." The defendant challenges the sufficiency of the evidence with respect to the fourth element, namely, that he had no proper permit. See, e.g., *State* v. *Davis*, supra, 324 Conn. 794–95, 801.

As this court previously has explained, "the lack of a proper permit is an essential element of the crime charged and . . . the state ha[s] the burden of proving beyond a reasonable doubt that a proper permit for the weapon had not been issued as provided in [General Statutes] § 29-28." *State* v. *Beauton*, 170 Conn. 234, 240, 365 A.2d 1105 (1976). General Statutes (Rev. to 2017) § 29-28,[6] which is expressly referenced in § 29-38 (a), provides in relevant part: "(b) . . . . No state or temporary state permit to carry a pistol or revolver shall be issued under this subsection if the applicant . . . (2) has been convicted of (A) a felony . . . ." The evidence here, through the stipulation, established that the defendant had been convicted of two felonies in 2006, one of which was illegal possession of a weapon in a motor vehicle.

Given that the parties stipulated that the defendant had those two prior felony convictions, it was reasonable for the trial court to infer that the defendant did not possess a "proper permit . . . ." General Statutes (Rev. to 2017) § 29-38 (a). Indeed, by operation of law, the defendant could not possess a "proper permit . . . as provided in section 29-28 . . . ." General Statutes (Rev. to 2017) § 29-38 (a). In my view, the fact that the defendant was a convicted felon was sufficient proof beyond a *reasonable* doubt that he did not possess a *proper* permit.

The state was not required to eliminate every theoretically possible scenario under which the defendant might have had a permit despite being a convicted felon.

The state was required to prove that the defendant did not possess a proper permit beyond a reasonable doubt, not to a mathematical certainty, or beyond all possible doubt. See, e.g., Connecticut Criminal Jury Instructions 2.2-3, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited September 8, 2023) ("[p]roof beyond a reasonable doubt does not mean proof beyond all doubt . . . [as] the law does not require absolute certainty on the part of the jury before it returns a verdict of guilty"). Certainly, the state's burden is not the "theoretically *impossible*" standard to which the majority now holds the state. (Emphasis in original.) Footnote 17 of the majority opinion.

Consistent therewith, it is important to keep in mind that, in a sufficiency of the evidence appeal, "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's finding or] verdict of guilty." (Internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 567, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002). Consequently, I would conclude that the trial court correctly determined that the state proved beyond a reasonable doubt that the defendant had a weapon "for which a *proper* permit ha[d] not been issued as provided in section 29-28 . . . ." (Emphasis added.) General Statutes (Rev. to 2017) § 29-38 (a).[7]

With respect to the defendant's contention that the trial court improperly took judicial notice of § 29-28, I disagree. In fact, the court was obligated to consider the provisions of § 29-28 in determining whether the defendant had violated § 29-38. Indeed, § 29-38 (a) directs the court to look to and apply § 29-28. See General Statutes (Rev. to 2017) § 29-38 (a) (proscribing having weapon in vehicle "for which a proper permit has not been issued as provided in section 29-28").

Therefore, the trial court's application of § 29-28 to the facts of the present case was no more than the court's application of its knowledge of the law to the case in the same way that a jury would have done once it was instructed on the applicable law. See, e.g., *State* v. *Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003) ("[i]n the absence of any evidence to the contrary, [j]udges are presumed to know the law . . . and to apply it correctly" (internal quotation marks omitted)), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); see also, e.g., 23 C.J.S., Criminal Procedure and Rights of Accused § 986 (2023) ("[t]rial courts and trial judges are presumed to know the law, and their rulings come to [an] appellate court with a presumption of correctness" (footnotes omitted)); cf. *State* v. *Baltas*, 311 Conn. 786, 810, 91 A.3d 384 (2014) (it is well established that "[a] request to charge [that] is

relevant to the issues of [a] case and [that] is an accurate statement of the law must be given" (internal quotation marks omitted)). The trial court acted properly in its role as fact finder by relying on its knowledge of the law, namely, that the defendant, as a felon, was not able to possess a proper permit for a weapon pursuant to the provisions of § 29-28 at the time of the charged crime. Therefore, I would conclude that there was sufficient evidence to support the defendant's conviction of illegal possession of a weapon in a motor vehicle.

Accordingly, I respectfully dissent from part II of the majority opinion.

[1] All references to § 29-38 in this opinion are to the 2017 revision of the statute.

[2] I agree with the majority's recitation of the facts but take this opportunity to point out that the parties and the trial court appeared to treat the stipulation as if it applied to count three. I acknowledge that, in relaying the agreement of the parties to the court, the prosecutor initially stated that the stipulation applies to count two. I also note, however, that defense counsel told the trial court that the stipulation applies to the court trial. The majority contends that the only way to read the parties' statements is that defense counsel was only following the state's lead, and the real agreement was that the stipulation was limited to count two. See part II of the majority opinion. Another way to read defense counsel's statement is that he was clarifying or providing the full and accurate agreement of the parties from his own perspective as a party to the agreement, which was that the stipulation was limited to the court trial, as he said. Indeed, ultimately, when the stipulation was admitted into evidence, the trial court stated, "[i]t's going to be a full exhibit for purposes of the court trial . . . ."

The majority also discounts the trial court's statement at the close of evidence regarding the stipulation that it was "the only evidence that was received solely for the second *and third* count"; (emphasis added); as "imprecise" and defense counsel's failure to object to the prosecutor's and the trial court's reliance on the stipulation as an "oversight . . . ." Part II of the majority opinion. I disagree. I would consider the prosecutor's express reliance on the stipulation for purposes of count three, the trial court's repeated references to and reliance on it, defense counsel's statement that the stipulation was for the court trial, and defense counsel's failure to object as strong evidence that the parties and the trial court understood and intended for the stipulation to be admitted for purposes of the court trial, which involved a determination of guilt as to counts two and three. In the final analysis, at best, there is more ambiguity on this point than the majority admits. Consequently, contrary to the majority, I would read any ambiguity in the record surrounding the initial submission of the stipulation into evidence and how that evidence ultimately was used to support the trial court's finding rather than in the strictest light possible to overturn the finding.

[3] The majority appears to acknowledge that a claim that a jury considered improper evidence would be an evidentiary or trial error subject to harmless error analysis but then states that the error here would be harmful because, without the stipulation, there was insufficient evidence to support the trial court's finding on count three. See footnote 24 of the majority opinion; see also part II of the majority opinion. That entirely misses the point. Harmless error analysis is not used in analyzing a sufficiency of the evidence claim. See, e.g., *United States* v. *Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986) (harmless error inquiry does not focus on sufficiency of evidence); *Kotteakos* v. *United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) (distinguishing between harmless error analysis and sufficiency of evidence analysis and holding that "[a harmless error] inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error"). The application of harmless error in these cases demonstrates that the claim was deemed an evidentiary or trial error, not a sufficiency of the evidence claim. Moreover, if the error is determined to be harmful, the remedy in those cases is not acquittal but, rather, a new trial.

In addition, the majority attempts to distinguish the cases in which this court and others have treated a claim that a jury considered evidence for

an improper purpose as an evidentiary or trial error on the ground that the present case is different because the trial court was the fact finder. I disagree that the fact that the trial court was the fact finder in this case somehow transforms a claim of an evidentiary or trial error into a sufficiency of the evidence claim. That is not consistent with this court's position in *State* v. *Taupier*, 330 Conn. 149, 193 A.3d 1 (2018), cert. denied, U.S. , 139 S. Ct. 1188, 203 L. Ed. 2d 202 (2019), in which this court explained that a claim that a trial court improperly considered certain evidence when acting as the fact finder was an evidentiary claim, even though the defendant attempted to cast it as a sufficiency of the evidence claim. See id., 180–81.

[4] The majority does not even mention *Lockhart* and, instead, places great emphasis on *State* v. *Kareski*, 137 Ohio St. 3d 92, 98, 998 N.E.2d 410 (2013), from the Supreme Court of Ohio. See part II of the majority opinion. I would agree with the dissent in that case that the majority's holding in *Kareski* is "a departure from settled [double jeopardy] principles recognized by the United States Supreme Court . . . [and that, by] equating a reversal for evidentiary trial error with an acquittal for constitutionally insufficient evidence, the majority's holding runs headlong into a thicket of state and federal constitutional problems and will undoubtedly cause uncertainty and confusion for appellate courts." *State* v. *Kareski*, supra, 100 (French, J., dissenting).

[5] The majority asserts that "[t]he logical extension of this argument is that, whenever a trial court has used information that was not admitted as evidence at trial to reach its decision—for example, when a trial court conducts its own independent investigation of the facts after the close of evidence—the information was, for all intents and purposes, admitted as evidence, albeit improperly. . . . We cannot agree with such an untenable proposition." Footnote 23 of the majority opinion. The majority's attempt to recast my position is itself untenable. My position is that, *in our review of a sufficiency of the evidence claim*, there is no meaningful distinction between evidence that was improperly admitted and evidence that was admitted but considered by the fact finder beyond the purpose for which it was admitted. For purposes of a sufficiency of the evidence claim, a reviewing court must consider the full quantum of evidence considered by the trial court, even if some of the evidence was improperly considered.

That is not to say that a fact finder's improper consideration of facts not in evidence cannot be addressed. For instance, in *State* v. *Newsome*, 238 Conn. 588, 682 A.2d 972 (1996), this court considered a claim that the defendant's right to a fair trial had been violated because one of the jurors allegedly drove past the crime scene to investigate. See id., 626. In considering that claim, this court explained that "not every incident of juror misconduct requires a new trial"; id., 627; and that "[t]he question is whether . . . the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." (Internal quotation marks omitted.) Id., 628. This court explained that, "in cases [in which] the trial court is directly implicated in juror misconduct, the state bears the burden of proving that [the] misconduct was harmless error." (Internal quotation marks omitted.) Id. A trial court conducting its own investigation is simply a different type of error. I am in no way suggesting that this error cannot be addressed. Instead, I would follow the lead of the United States Supreme Court and conclude that such an error would be a trial error because the defendant "has been convicted through a judicial process [that] is defective in some fundamental respect." (Emphasis omitted; internal quotation marks omitted.) *Lockhart* v. *Nelson*, supra, 488 U.S. 40.

[6] Hereinafter, all references to § 29-28 in this opinion are to the 2017 revision of the statute.

[7] My conclusion that affirmance is the appropriate outcome here does not mean that I disagree with the majority's reflection that the best practices were not followed in this case. The stipulation could have been explicit as to the purpose for which it was to be used, and the prosecutor could have made his reliance on the stipulation for count three more transparent during the course of the trial, rather than after the close of evidence.